## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 14-cv-805 (TSC) |
| | ) |
| NATIONAL SECURITY AGENCY, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Jason Leopold submitted two FOIA requests seeking records related to surveillance of federal and states judges—one to the National Security Agency ("NSA") and one to the Department of Justice's Office of Legal Counsel ("OLC"). Both agencies indicated they had no records responsive to Leopold's requests. Defendants have filed a motion for summary judgment; Leopold opposes the motion because he claims the agencies failed to perform adequate searches for a variety of reasons. While the court agrees with Defendants on most of the issues raised by Leopold, the court finds that on a small number of issues, Defendants have failed to conduct an adequate search or failed to adequately explain the basis for their search. As a result, Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND

In March 2014, Leopold submitted two similar FOIA requests to NSA and OLC. The NSA request sought "disclosure of any and all National Security Agency policies, memoranda, training materials and guidance about the propriety of surveilling federal and states judges." (Phillips Decl. Tab 1). The OLC request sought "any and all memoranda and legal opinion [sic]

1

from the Office of Legal Counsel about the propriety of surveilling federal and states judges."

(Colborn Decl. Ex. A).

OLC responded the next month and stated that a search of its files located no records responsive to the request. Leopold appealed this determination, and the administrative appeal remained pending at the time Leopold filed this suit.

In August 2014 (after Leopold had filed this lawsuit), NSA similarly responded that it found no responsive records. NSA directed Leopold to two websites that contained publicly available policies, guidance, and training materials related to surveillance of U.S. persons, explaining that any policy applicable to U.S. persons would also apply if that person was a federal or state judge.

Leopold challenges the adequacy of the NSA and OLC searches on multiple grounds, which are set forth below.

## II.   LEGAL STANDARD

### a.   Motion for Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb*, 433 F.3d at 895

(quoting *Liberty Lobby*, 477 U.S. at 248). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *See id.* The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

      b.  <u>FOIA</u>

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under clearly delineated statutory language." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. § 552(a), (b).

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders*

*of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  In ruling on the adequacy of an agency's search in response to a FOIA request, "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal quotation marks and citations omitted).  An agency may prove the reasonableness of its search via the declaration of a responsible agency official, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency declaration can demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id*.  Once an agency has provided adequate affidavits, the burden reverts to the plaintiff to demonstrate the lack of a good faith search. The presumption of good faith "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

### III.    ANALYSIS

#### a.   Adequacy of NSA's Search

Leopold challenges the adequacy of the NSA's search on three grounds: that it failed to search the appropriate offices, failed to search the appropriate records systems, and inadequately explained its use of search terms.

##### i.  *Failure to Search the Appropriate Offices*

Pamela Phillips, (former) Chief of the FOIA and Privacy Office at the NSA, explained in her declaration that in response to Leopold's request, NSA searched the Office of General Counsel ("OGC") and the Signals Intelligence[1] Office of Policy and Corporate Issues. The OGC is "responsible for legal oversight and compliance of NSA activities . . . [and] maintains documents pertaining to NSA policy on the conduct of Signals Intelligence activities." (Phillips Decl. ¶ 12). A FOIA representative within the OGC searched an electronic database that "maintains information on policies, memoranda, training materials and other documents that have been submitted for review by the Office of General Counsel," and also "sent a request to attorneys within the OGC who would be tasked with reviewing [Signals Intelligence] policies regarding particularities of surveillance." (*Id.*). Neither search produced any results.

The Signals Intelligence Office of Policy and Corporate Issues is "the entity responsible for policy and guidance pertaining to Signals Intelligence . . . [and] is tasked with conducting the necessary minimization procedures of the electronic surveillance of U.S. persons." (*Id.* ¶ 13). Phillips explained that "the subject matter experts within the [office] are well aware of all of the

---

[1] "NSA's foreign intelligence mission includes the responsibility to collect, process, analyze, produce, and disseminate signals intelligence ('SIGINT') information." (Phillips Decl. ¶ 3). As this signal intelligence relates to surveillance of U.S. persons, Phillips explained that "[i]n order to intentionally collect the communications of any U.S. person (including federal and states judges) NSA would first have to obtain authorization from the Foreign Intelligence Surveillance Court (FISC). NSA's policies, procedures, and training for handling U.S. person information in FISC-authorized surveillances would apply to federal and state judges as well as other U.S. persons." (*Id.* ¶ 5).

policy, memoranda, and training documents associated with [Signals Intelligence] activities, and have knowledge that there are no such documents related to the surveillance of federal or state judges . . . As such, the [office], with knowledge that FISA does not delineate federal or state judges for differential treatment, knew that NSA would not have any documents responsive to Plaintiff's request." (*Id.* ¶ 14).

Leopold objects to the scope of NSA's search efforts and identifies numerous other offices that should have been searched, including the Office of the Inspector General, Office of the General Counsel (which was searched), Office of Director of Compliance, the Authorities Integration Group, Associate Directorate for Policy and Records, the Civil Liberties and Privacy Office, the National SIGINT Committee, the Associate Directorate of Training and Education, and each major NSA organization's Directorate Compliance Component. Leopold deduced that these offices may have responsive records from a report titled "NSA's Civil Liberties and Privacy Protections for Targeted SIGINT Activities Under Executive Order 12333," a copy of which Leopold did not provide. (Pl. Opp'n 9). In response to Leopold's claims, the NSA provided a declaration by Paul Blaskowski, who apparently replaced Phillips as Chief of the NSA FOIA office after Defendants filed their motion. Blaskowski explained that NSA searched only the OGC and the Signals Intelligence Office of Policy and Corporate Issues because those are the "two offices that would create policy, guidance, memoranda or training materials, or would have the responsibility of reviewing such materials." (Blaskowski Decl. ¶ 5). According to Blaskowski, searching the offices Leopold identified would be unnecessary or redundant because they "would either not have documents relevant to the request . . . or would only have documents previously vetted by the Office of the General Counsel and/or the Signals Intelligence Office of Policy and Corporate Issues . . . any document maintained by the other offices

addressed by Mr. Leopold would also be contained within the records" of the two offices NSA searched. (*Id.*).

The names of at least some of the offices Leopold identifies suggest they may have responsive records—for example, the Associate Directorate of Training and Education is reasonably likely to have training materials. However, there is "no requirement that an agency search every division or field office in response to a FOIA request," *Marrera v. U.S. Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985), and Leopold offers no evidence that responsive records that were not otherwise to be found as a result of the agency search may reside in any of the additional offices. The agency provided reasonably detailed affidavits explaining why it only searched two offices, and why a search of the offices Leopold identifies would be redundant and not likely to result in the location of any responsive records. Phillips and Blaskowski are both responsible government agency officials and their testimonials are neither lacking in detail nor controverted by contrary evidence or evidence of bad faith. *See Military Audit Project*, 656 F.2d at 738. Leopold's "purely speculative claims about the existence and discoverability of other documents" do not overcome the "presumption of good faith" afforded to the agency's declarations. *SafeCard Servs.*, 926 F.2d at 1200.

### ii.  *Failure to Search the Proper Records Systems*

#### 1.  Emails

Leopold claims that the NSA should have searched emails for responsive records, especially in light of the fact that he included in his "INSTRUCTIONS REGARDING SEARCH" a request that the agency conduct an email search. (Phillips Decl. Tab 1). However, as Defendants correctly point out, an agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice,* 73

F.3d 386, 389 (D.C. Cir. 1996).  Leopold's request sought "policies, memoranda, training materials and guidance."  It was reasonable for NSA to determine that an email search was unlikely to uncover responsive records, especially given that other databases were available that specifically compiled policies, memoranda, training materials, and guidance.  *See Mobley v. CIA*, 924 F. Supp. 2d 24, 44 (D.D.C. 2013) ("even when a requester specifically asks an agency to search a particular database, the agency has no obligation to do so unless that database is 'likely to contain responsive materials.'") (internal citation omitted).

### 2.   Directives

Next, Leopold alleges that NSA should have searched the United States Signals Intelligence Directive System ("USSID") (via two records systems called NSA Net and INTELINK), as they contain directives that reflect policies related to systems intelligence.  (Pl. Opp'n 10).  Leopold notes that NSA directed him to a publicly available directive (titled "USSID 18") as potentially "of interest," but nowhere indicates whether it searched for other USSID directives.  NSA argues that it did search for responsive directives by asking members of the Signals Intelligence Office of Policy and Corporate Issues whether any responsive records existed.  It appears that NSA intends to argue that asking for all responsive records was sufficient, because responsive directives would implicitly be included within this universe, meaning NSA searched for responsive directives by default.  Given that NSA itself identified a directive "of interest" but failed to explain why it did not search for other directives, and because Leopold has identified a particular source of records which may hold responsive documents, NSA is ordered to conduct a search of the United States Signals Intelligence Directive System and disclose responsive documents, if any, or claim an exemption.

### iii.  Search Terms

Lastly, Leopold faults the OGC's choice of search terms.  OGC used the terms "surveillance state judges," "surveillance federal judges," "federal judges," and "state judges." Leopold argues that the NSA's declaration does not provide enough information to understand how the computerized database works and whether, for example, "surveillance federal judges" would also capture "surveillance *of* federal judges" or "surveillance *of a* federal judge."  (Pl. Opp'n 10-11 (emphasis added)).  NSA responds that it developed search terms based on the language of the request, and that Leopold's particular concerns are irrelevant because, for example, it does not matter whether "surveillance federal judges" captures "surveillance of federal judges" or "surveillance of a federal judge" because the NSA also searched "federal judges."  (Def. Reply 7-8).  The court finds that while NSA could have provided additional explanation regarding the nature of its database search, ultimately the terms "federal judges" and "state judges" are terms taken directly from the request, and were reasonably calculated to capture any responsive records.

### b.  Adequacy of OLC's Search

Leopold challenges the adequacy of the OLC's search on six grounds: that it failed to search for drafts of memoranda and legal opinions, failed to search for letters and other types of records, inadequately searched for classified records, failed to search the correct records systems, used inadequate search terms, and failed to state whether it located non-responsive records.

### i.  Drafts

Leopold's OLC request sought "any and all memoranda and legal opinion[s] from the Office of Legal Counsel about the propriety of surveilling federal and states judges."  (Colborn Decl. Ex. A).  The OLC only searched for final legal opinions and memoranda.  Leopold argues

that it should have also searched for drafts. Defendants argue in response that the natural meaning of the terms "opinion" and "memoranda" are limited to only final opinions and memoranda, not drafts. The court is persuaded that "any and all memoranda and legal opinion[s]" means exactly what it says—any and all, meaning drafts and final product. OLC has not provided any persuasive justification regarding why it did not search for drafts, and is therefore ordered to reprocess Leopold's request and conduct a search for draft memoranda and legal opinions.

## ii.   Letters and other Records

Leopold next argues that OLC impermissibly narrowed the scope of his request by only searching for memoranda and legal opinions. He argues that the OLC must have used a term of art to artificially limit the search to only memoranda and legal opinions, and that using a plain meaning approach requires OLC to also search for other types of records, including letters. Once again, the court is persuaded that "any and all memoranda and legal opinion[s]," the terms Leopold chose to use in his request, mean exactly what they say—memoranda and legal opinions, and not any other types of records. *See Kowalczyk,* 73 F.3d at 389 (the agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents."). Moreover, even if Leopold was correct regarding the scope of the request, OLC confirmed that it searched for all final written work product, not just memoranda and legal opinions, thus negating Leopold's objection. (Colborn Decl. ¶ 4).

## iii.   Inadequate Search for Classified Records

Leopold next takes issue with the manner in which OLC searched for classified records. Paul Colborn, the Special Counsel at OLC who supervises OLC's response to FOIA requests, explained that while unclassified records are stored electronically, classified records are stored

either in individual safes or in OLC's Sensitive Compartmented Information Facility. (Colborn Decl. ¶ 5). According to Colborn, any final classified legal memoranda or opinions are also stored in a centralized paper file. In response to Leopold's request, an OLC attorney asked an OLC Deputy Assistant Attorney General and an OLC Senior Counsel, "both of whom are senior attorneys with long tenures in OLC and have close familiarity with OLC's work on national security and surveillance matters," whether they were aware of any classified (or unclassified) records that would be responsive to the request. The two senior officials did not identify any responsive records. (*Id.* ¶ 7). After Leopold filed suit, OLC conducted an additional search "by reviewing a central index of OLC's final work product classified at the Secret or Top Secret levels," which also yielded no results. (*Id.* ¶ 11). This latter search appears to satisfy Leopold's concern that if "OLC did no more to search for classified records than asking two long-tenured individuals whether responsive classified records exist, this search was insufficient in light of the existence of other records systems which could have been readily searched." (Pl. Opp'n 4). While it may or may not have been appropriate to only ask two senior agency officials, *see Hall & Assocs. v. EPA*, 14 F. Supp. 3d 1, 7 (D.D.C. 2014), the issue is moot given that OLC subsequently searched its central index of classified records, which Leopold suggests (and the court agrees) rendered the search adequate.

### iv.   *Failure to Search the Appropriate Records Systems*

OLC maintains a centralized database of all final unclassified work product that is searchable using a search engine called Isys Search Software. An OLC attorney familiar with the Isys system searched the database and found no responsive records. (Colborn Decl. ¶¶ 4, 6). Leopold argues that in addition to the Isys system, OLC should have searched four other records systems: (1) OLC Daybooks, a file that allows OLC to locate all hard-copy documents created

since 1945; (2) the Office Matter Tracking System, which tracks current and former matters and can be keyword searched; (3) the OLC Central File, which Leopold alleges is a master subject-matter index of OLC files;[2] and (4) a chronological list of short summaries of OLC opinions. OLC responds that Leopold did not request that OLC search these sources in his original request, and that any responsive records would have been captured in either the Isys search (which includes all unclassified work product), the classified index, or through discussions with the two senior agency officials. As a result, any additional searches would be redundant. (Def. Reply 11-12).

Because Leopold did not identify the four specific sources in his original FOIA request, and because OLC searched the sources likely to contain responsive records, the court finds OLC's search adequate in this respect and will not require it to search these additional sources. "There is no requirement that an agency search every record system . . . However, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68 (internal citations omitted). It is not even clear whether all the sources Leopold identifies exist, and in any event, the Isys search appears to have been reasonably calculated to uncover all responsive records. Leopold has not identified any records not located on the Isys system that would have been located in the other systems, nor has he rebutted OLC's explanation that a search of the other systems would be redundant.

*v.  Insufficient Keyword Searches*

Leopold proposes numerous search terms that he believes should have been used when OLC searched its electronic databases. While OLC argues that its original search terms were

---

[2] OLC Daybooks and the Office Matter Tracking System are referenced in an OLC webpage outlining OLC's various record systems. Leopold cites a Federal Register notice as evidence of the OLC Central File, but the cited notice contains no reference to a Central File and does not include the quotations Leopold provides.

adequate because they mirrored the terms used in the request, it nonetheless ran the searches Leopold requested and located no responsive records. (Second Colborn Decl. ¶ 6). This issue is therefore moot.

### vi.   Failure to Identify Whether Non-responsive Documents Were Found

Lastly, Leopold argues that OLC should be forced to disclose how many non-responsive records, if any, it collected during its search. He identifies one document that, while admittedly non-responsive, should have been found using the OLC's search terms. This is offered as evidence that because non-responsive records exist, Leopold should be apprised of their existence so he can challenge their non-responsiveness. While FOIA cases are not typically concerned with non-responsive documents, here, because Leopold's request is narrow and he has identified a specific document that would likely have been captured by the search terms, the court will require OLC to indicate whether it located no records at all, or located some records that were deemed non-responsive. *See Ray v. Fed. Bureau of Prisons*, 672 F. Supp. 2d 75, 79-80 (D.D.C. 2009) ("On this record, it is impossible to definitively conclude that the documents that the defendant determined to be non-responsive were, in fact, non-responsive."); *cf. NYC Apparel FZE v. U.S. Customs & Border Prot.*, No. 4-2105, 2006 WL 167833, at *7 (D.D.C. Jan. 23, 2006) ("There may be many plausible explanations for how the agency distinguished between responsive and non-responsive documents that are in the seizure case files; however, the defendant has not provided one."). OLC is under no obligation to produce non-responsive documents if any exist. *See Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 114 (D.D.C. 2014) ("non-responsive records need never be produced at all"); *Pub. Investors Arbitration Bar Ass'n v. SEC*, 930 F. Supp. 2d 55, 72 (D.D.C. 2013) ("[I]t is elementary that an agency's decision to withhold *non-responsive* material is not a violation of the FOIA.") (emphasis in

original), *aff'd*, 771 F.3d 1 (D.C. Cir. 2014).  But on the particular facts of this case, it will be helpful to know whether any records were found or not.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part.  An appropriate Order accompanies this Memorandum Opinion.


Date: August 10, 2015


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge