# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

)
JASON LEOPOLD, )
)
      Plaintiff, )
)
  v. ) Civil Action No. 14-cv-805 (TSC)
)
NATIONAL SECURITY AGENCY, *et al.*, )
)
      Defendants. )
)

## MEMORANDUM OPINION

In March 2014, Plaintiff Jason Leopold submitted two Freedom of Information Act ("FOIA") requests seeking records related to surveillance of federal and state judges – one to the National Security Agency ("NSA") and one to the Department of Justice's Office of Legal Counsel ("OLC" and, together with NSA, "Defendants"). Both agencies indicated that they had no records responsive to the FOIA requests, prompting Plaintiff to initiate this litigation.

In July 2015, this court granted in part and denied in part Defendants' first motion for summary judgment, finding that Defendants had failed to conduct an adequate search and to adequately explain the basis for their search in certain limited respects. Among other things, the court ordered OLC to reprocess Plaintiff's FOIA request by searching for draft memoranda and legal opinions related to surveillance of federal and state judges.

Defendants have now renewed their motion for summary judgment. Plaintiff challenges only the manner in which OLC searched for these draft memoranda and legal opinions.

Upon consideration of Defendants' renewed motion for summary judgment and the parties' briefs in support thereof and in opposition thereto, and for the reasons set forth below, Defendants' motion is hereby **DENIED**.

I. **BACKGROUND**

The procedural and factual background of this case is set forth in the court's July 2015 Memorandum Opinion granting in part and denying in part Defendants' first motion for summary judgment. *See generally Leopold v. Nat'l Sec. Agency*, 118 F. Supp. 3d 302 (D.D.C. 2015). The July 2015 Memorandum Opinion ordered that two additional searches be conducted and that certain other information be provided to Plaintiff. *See id.*

Defendants' renewed motion for summary judgment centers on one of the additional searches ordered by the court:

> The court is persuaded that "any and all memoranda and legal opinion[s]" means exactly what it says – any and all, meaning drafts and final product. OLC has not provided any persuasive justification regarding why it did not search for drafts, and is therefore ordered to reprocess Leopold's request and conduct a search for draft memoranda and legal opinions.

*Id.* at 309-10 (citation to record omitted).

Prior to the issuance of the court's July 2015 Memorandum Opinion and Order, "OLC had already conducted a search for final legal advice 'about the propriety of surveilling federal and state judges' and located no responsive documents." (Mot. Ex. 3 ("Third Colborn Decl.") ¶ 10). According to OLC Special Counsel Paul P. Colborn, "[t]he fact that no final legal advice on this subject was located . . . made it much more difficult to identify any likely locations to search for any draft legal advice that might exist." (*Id.*). For example,

> [h]ad OLC located final legal advice concerning the topic, [OLC] would have been able to determine whether a file had been maintained with materials related to the advice, and could have located any drafts that may have been maintained in that file. [OLC] also likely would have been able to identify the principal attorneys who had worked on the advice. With that information as a lead, [OLC] would have searched the individual hardcopy and computer files of those attorneys for drafts of the advice.

(*Id.*).

The search that OLC ultimately conducted pursuant to the court's July 2015 Memorandum Opinion and Order proceeded as follows:

> [A]n OLC attorney asked an OLC Deputy Assistant Attorney General and an OLC Senior Counsel, both of whom are senior attorneys with long tenures in OLC (the Deputy Assistant Attorney General joined the Office in 1989; the Special Counsel joined the Office in 1998, departed for nine years in 2001, and rejoined the Office in 2010) and have close familiarity with OLC's work on national security and surveillance matters, . . . whether they were aware of any classified or unclassified OLC projects concerning the "propriety of surveilling federal or state judges," regardless of whether the project resulted in final legal advice.

(*Id.* ¶¶ 6, 9). "This inquiry yielded no responsive records." (*Id.* ¶ 9).

Additionally, shortly after Plaintiff filed his brief opposing Defendants' renewed motion for summary judgment, "a general inquiry was sent to all OLC attorneys . . . asking if they had, or were aware of, any draft legal memoranda or opinions relating to the 'propriety of surveilling federal and state judges.'" (Reply Ex. 1 ("Fourth Colborn Decl.") ¶ 11). "[A]ll OLC attorneys reported that they did not have and were not aware of any such records." (*Id.*).

Colborn avers that searching OLC's paper files, the email files of departed OLC attorneys and the hard drives of departed users "likely would take several years and the diversion of resources from other FOIA requests," which "would result in a dramatic increase in [OLC's] FOIA processing backlog." (*Id.* ¶ 9).

II.    **LEGAL STANDARD**

    a. <u>Motion for Summary Judgment</u>

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment may be rendered on a "claim or defense . . . or [a] part of each claim or defense." Fed. R. Civ. P. 56(a). "A party asserting that a

3

fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb*, 433 F.3d at 895 (quoting *Anderson*, 477 U.S. at 248). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *See id.* The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (citing *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980)).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *see also Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials, and must be supported by affidavits, declarations or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant is required to provide evidence that would permit a reasonable jury to find in his favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

  b. <u>FOIA</u>

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their

4

records available to the public, unless such "information is exempted under clearly delineated statutory language." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. § 552(a), (b).

"'FOIA cases typically and appropriately are decided on motions for summary judgment.'" *Georgacarakos v. Fed. Bureau of Investigation*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). In ruling on the adequacy of an agency's search in response to a FOIA request, "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal quotation marks and citations omitted).

An agency may prove the reasonableness of its search via the declaration of a responsible agency official, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (citations omitted). There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *See Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency declaration can demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.*

Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate the lack of a good faith search. The presumption of good faith "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."

*SafeCard Servs., Inc. v. Securities & Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

### III. ANALYSIS

Defendants contend that simply asking two senior OLC attorneys whether they were aware of any OLC projects concerning the propriety of surveilling federal or state judges, regardless of whether the project resulted in final legal advice, satisfied their obligations under FOIA to conduct the search for draft memoranda and legal opinions required by the court's July 2015 Memorandum Opinion and Order. (*See* Fourth Colborn Decl. ¶ 11). Plaintiff disagrees, arguing that merely asking these two senior OLC attorneys did not constitute an adequate search. (Opp'n at 7-8).

The court agrees with Plaintiff, and finds that the senior attorneys' responses to this inquiry do not provide sufficient basis to reasonably conclude either that OLC is unlikely to possess responsive records or that responsive records are unlikely to be found by a more in-depth search. Moreover, the court finds that asking all current OLC attorneys if they had, or were aware of, any draft legal memoranda or opinions relating to the propriety of surveilling federal or state judges – as was done here after Plaintiff filed his opposition brief – was also insufficient.

\* \* \*

OLC employs approximately twenty to twenty-five attorneys at any one time (*see* Third Colborn Decl. ¶ 2), and Colborn "conservatively estimates that more than three hundred attorneys have worked in the Office during the time period since 1933, the period of Plaintiff's proposed search." (Fourth Colborn Decl. ¶ 9(a)). Despite the long tenures of the two senior OLC attorneys who were asked about potentially responsive records, and their familiarity with OLC's work on national security and surveillance matters, merely asking these two individuals

6

about their personal knowledge does not, in the court's view, sufficiently demonstrate that responsive documents do not exist or would not be found by a more in-depth search. As Plaintiff notes, "[d]raft opinions are assigned to a primary Deputy and an Attorney-Advisor, with a second Deputy only reviewing the draft when it is ready for secondary review," and "draft opinions may not have been circulated to the particular individuals who were consulted in responding to Plaintiff's FOIA request." (Opp'n at 8) (citation omitted). The same holds true for asking all current OLC attorneys about whether they knew of responsive documents, as such documents could have been generated, unbeknownst to any current OLC attorneys, by an attorney who is no longer there, or by any of the hundreds of attorneys who worked at the agency before them.

The question thus becomes what OLC must do in order to conduct an adequate search for responsive documents. In his opposition brief and supporting documents, Plaintiff identifies only four additional actions that OLC could take to search for the requested documents: (i) sending an email to all current OLC attorneys asking if they had worked on the issue of surveilling judges; (ii) requesting that current OLC attorneys search their computers and emails for responsive documents; (iii) searching departed OLC attorneys' hard drives for responsive documents; and (iv) searching departed OLC attorneys' emails for responsive documents. (*See* Opp'n at 5-6; Pl.'s Resp. to Defs.' Statement of Facts Not in Dispute ¶ 12; Pl.'s Statement of Facts in Dispute ¶¶ 2-3).

Shortly after Plaintiff filed his opposition brief, a general inquiry was, in fact, sent to all OLC attorneys "asking if they had, or were aware of, any draft legal memoranda or opinions relating to the 'propriety of surveilling federal and state judges,'" in response to which "all OLC attorneys reported that they did not have and were not aware of any such records." (Fourth Colborn Decl. ¶ 11). Thus, the only stones left unturned are requesting that current OLC

7

attorneys search their computers and emails, searching the hard drives of departed OLC attorneys and searching the emails of departed OLC attorneys.

The court will not require OLC to request that its current attorneys search their computers and emails for responsive documents. First, the court agrees with Colborn that it is "extremely unlikely that current attorneys, who have indicated that they do not have, and are not aware, of any draft legal opinions or memoranda on the topic, would nevertheless have such documents within their files." (*Id.* ¶ 13). The court will take OLC's attorneys at their word. Second, the court credits Colborn's representation that requiring all current OLC attorneys to search their computers and emails would be unduly burdensome, as it "could require a significant amount of time by each attorney in the Office, including manually opening files to conduct searches where the search tools permit only the searches of file names and not the content of documents." (*Id.*).

As to searching the hard drives of departed OLC attorneys, Colborn avers as follows:

> Documents from the hard drives of over 100 departed [OLC attorneys and staff members] are available on OLC's shared network drive on the Department's electronic file server, totaling over 160,000 individual files. There are over 500 gigabytes in this archive, although some documents appear in duplicate and some archived emails are included. The names of the files on these hard drives are searchable using a Windows search tool. OLC does not have a search tool that can search the full text of files across the archive; to do so would require opening and searching each document individually.

(*Id.* ¶ 9(c)). Based on Colborn's representations, the court finds that requiring OLC to manually open, one-by-one, over 160,000 files from over 100 OLC attorneys and staff members and then search the full text of each file individually would be unduly burdensome. *See, e.g.*, *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995) ("[A]ppellants have asked Customs to search through 23 years of unindexed files for records

pertaining to [then-presidential candidate H. Ross] Perot, and we concur with the district court's determination that this search would impose an unreasonable burden on the agency.").[1]

As to searching the email files of departed OLC attorneys, Colborn declares:

> The emails of at least 180 departed [OLC attorneys and staff members] may be searched using an eDiscovery search tool called Clearwell. . . . Clearwell searches the full text of emails and their attachments, including PDF files. It is my understanding that our departed users' accounts include data exceeding 300 gigabytes of archived email, and that searching this volume of data, without any limitation by date or custodian would consume considerable technical resources of the Department.

(Fourth Colborn Decl. ¶ 9(b)). Colborn also avers that the "search terms that can be used with respect to [Plaintiff's] request necessarily are fairly broad and generic, turning largely on variants of the terms 'surveillance' and 'judge,'" and that such search terms would result in a number of "false hits," requiring an OLC employee to review each "hit" to determine whether it was actually responsive to the FOIA request. (*Id.* ¶ 9).

The court finds that Defendants have not established that searching the email files of departed OLC attorneys would be unduly burdensome. While Colborn avers that it "likely would take several years and the diversion of resources from other FOIA requests" to search for responsive documents among OLC's paper files, hard drives and emails, he does not break out the time and resources that would be required to search only the emails of departed OLC attorneys. (*Id.*). Given that these emails and their attachments can be searched using an eDiscovery tool without needing to open each email and its attachments individually, and in the

---

[1] Plaintiff does not specifically address searching OLC's paper files in his opposition brief. Nonetheless, the court notes that Colborn's declarations in this case indicate that such a search would also be unduly burdensome. (*See* Fourth Colborn Decl. ¶ 9(a) (searching non-classified paper files "would require manually reviewing the large volume of paper files of current and departed attorneys that remain in [OLC's] possession, as well as the records of any past attorneys that could be recovered from [OLC's] archives"); *id.* ¶¶ 3, 9(d) (searching classified paper files would require searching "more than 60 drawers of classified materials" in individual safes or in OLC's "Sensitive Compartmented Information Facility")).

absence of any representations from Colborn or any other declarant regarding the burden associated with running such searches separate and apart from searching OLC's paper files and hard drives, Defendants have not demonstrated that doing so would constitute an undue burden.

Plaintiff also states in his Statement of Material Facts in Dispute that "OLC could have had paralegals search, through Microsoft Outlook, the email of departed attorneys whose email files are on the shared drive," and that "doing so would not have taken an unreasonable amount of effort." (Pl.'s Statement of Facts in Dispute ¶ 3). In support, Plaintiff cites Colborn's March 2012 declaration from *Nat'l Day Laborer Org. Network v. U. S. Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012) [hereinafter *NDLON*], in which Colborn details just such a search. (*See* Opp'n Ex. 1 ¶ 8). Indeed, the *NDLON* search appears to have been conducted without the benefit of the eDiscovery tool referenced in the Fourth Colborn Declaration:

> [P]aralegals used the Microsoft Outlook program to search the e-mail files of all departed attorneys who had been employed at OLC between June 1, 2007 and October 15, 2010 and whose e-mail files were on OLC's shared network drive. E-mails were searched for a total of 25 departed attorneys. . . . No responsive documents were identified in these e-mail searches.

(*Id.*). Defendants respond only by noting that that the *NDLON* search covered a time period of less than four years and involved "fairly narrow" search terms, whereas here there is no time limit for the search and the search terms would be "fairly broad and generic." (Reply at 10) (quoting Fourth Colborn Decl. ¶ 12).

While the court notes the distinctions between *NDLON* and the instant case, and while it is cognizant of the risk of forcing OLC to sift through significant numbers of "false hits," the burden of the email search to be conducted here can nonetheless certainly be minimized by well-crafted search terms and reasonable limitations on dates and custodians. For example, the Fourth Colborn Declaration discusses "OLC attorneys and staff who are no longer employed at

10

OLC" (Fourth Colborn Decl. ¶ 9(b)), but Plaintiff appears to be interested only in searching "all departed attorneys' email files," and not the email files of departed non-attorney OLC staff members. (*See* Opp'n at 6). The parties should therefore be able to agree on custodian limitations that exclude non-attorney OLC staff members. The court is also hopeful that the parties can further limit the number of custodians whose emails will need to be searched by excluding attorneys who worked in areas where the topic of surveilling federal and state judges would not have arisen.

In the same vein, the court also notes that a search of emails alone will be less burdensome than the search of emails, paper files and hard drives contemplated in the Fourth Colborn Declaration, because an email-only search would, by definition, be limited to attorneys who have worked at OLC since the advent of email, whereas searches of emails, paper files and hard drives would presumably go back much further, and thereby encompass more custodians. Additionally, given Plaintiff's reference in his opposition brief to the "critical period of 2001-2010," the court is hopeful that the parties will be able to agree on some kind of date range limitation to further reduce the number of search returns. (*Id.* at 8).

Accordingly, the court hereby **ORDERS** OLC to use the Clearwell eDiscovery tool referenced in the Fourth Colborn Declaration to search the email files of departed OLC attorneys, as well as any attachments to those emails, for any draft legal memoranda or opinions relating to the propriety of surveilling federal or state judges. The parties are hereby further **ORDERED** to meet and confer to jointly devise the search terms to be used this search, and to attempt to narrow the search – such as, for example, by devising date and custodian limitations – so as to lessen OLC's burden in conducting it. The parties are hereby further **ORDERED** to file with the court a joint proposed scheduling order setting forth their agreed-upon search plan and parameters by no later than August 11, 2016.

## IV. CONCLUSION

For the foregoing reasons, Defendants' renewed motion for summary judgment is hereby **DENIED**.

An appropriate Order accompanies this Memorandum Opinion.

Date: July 11, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge